# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MICHAEL TURNER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 18-CV-653-JFH-JFJ** |
| ) | |
| **METROPOLITAN PROPERTY &** ) | |
| **CASUALTY INSURANCE COMPANY, d/b/a** ) | |
| **MetroLife Auto & Home Business Insurance, a** ) | |
| **foreign for-profit corporation insurance;** ) | |
| **VERICLAIM, INC., a foreign for-profit** ) | |
| **corporation;** ) | |
| **JOHN M. BROWN INSURANCE** ) | |
| **INCORPORATED, d/b/a Farmer Brown** ) | |
| **Insurance Agency, a foreign for-profit** ) | |
| **corporation,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Before the Court is Plaintiff Michael Turner's Motion to Strike Exhibits 2, 3, 4, and 15-21[1]

to Defendant John M. Brown Insurance Incorporated's Motion for Summary Judgment and Exhibit

3 to Defendant Metropolitan Property & Casualty Insurance Company's Motion for Summary

Judgment ("Motion to Strike") (ECF No. 103), which was referred to the undersigned by United

States District Judge John F. Heil, III (ECF No. 181).  Defendant John M. Brown Insurance,

Incorporated d/b/a Farmer Brown Insurance Agency, Inc. ("Farmer Brown") filed a response (ECF

No. 127), and Defendant Metropolitan Property and Casualty Insurance Company ("Metlife") filed

a separate response (ECF No. 130).[2]  Plaintiff Michael Turner ("Turner") filed a combined reply

---

[1] The title is in error.  Turner moves to strike Exhibits 2, 3, 4, and 14-20 from Defendant Farmer's Brown's motion for summary judgment.

[2] The Court refers to Metlife and Farmer Brown collectively as Defendants.

(ECF No. 150), and the issues are ripe for determination.  For the reasons explained below, the Motion to Strike (ECF No. 103) is denied.

## I.     Background

Turner purchased an insurance policy from Metlife covering a commercial building.  The policy was negotiated on behalf of Metlife by Maria Dossa ("Dossa"), an employee of Farmer Brown.  After a fire destroyed the building, Turner sought insurance benefits under the policy.  Metlife paid $100,000.00 in benefits, which Turner claims did not cover the replacement cost of the building.

In this lawsuit, Turner asserts a claim against Farmer Brown for negligent procurement of an insurance policy, alleging that Farmer Brown breached a duty of care by "advising [Turner] he had purchased a policy of insurance that contained replacement cost coverage without obtaining such a policy or confirming that the policy did, in fact, contain replacement cost coverage, and instead, mistakenly acquiring for [Turner] a policy that provided for the actual cash value of any loss."  ECF No. 2 at 10.  Turner asserts claims against Metlife for reformation of the policy, breach of contract, and breach of the duty of good faith and fair dealing.

On July 16, 2019, Turner requested in discovery all communications between Farmer Brown and Turner.  From October 6, 2020, to October 23, 2020, approximately one month before the discovery cutoff of November 9, 2020, Farmer Brown produced a total of twenty-four audio recordings of phone calls.  Turner moves to strike transcripts of these recordings from the summary judgment record – specifically, those attached by Farmer Brown to its motion as Exhibits 2, 3, 4, 14, 15, 16, 17, 18, 19, and 20, *see* ECF No. 96, and those attached by Metlife to its motion as Exhibit 3, *see* ECF No. 97 (collectively, the "Recordings").  The Recordings purport to be

recordings of phone conversations between Turner and Dossa, captured by Farmer Brown's recording system.

In its motion for summary judgment, Farmer Brown relied on six of the Recordings in support of its Statement of Undisputed Material Fact #8.  ECF No. 96 at 15 (emphasis added).  In its motion for summary judgment, Metlife relied on the Recordings in support of Statements of Undisputed Fact #20-23.  ECF No. 97 at 12-13.  In his responses to the motions for summary judgment, Turner objects to consideration of the Recordings.  *See* ECF No. 104 at 8; ECF No. 105 at 8.  In addition to objecting within the summary judgment briefing, Turner filed the separate Motion to Strike.[3]

## II.     Motion to Strike

The Motion to Strike is governed by Federal Rule of Civil Procedure 56(c)(2), which provides that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  The objection "functions much as an objection at trial, adjusted for the pretrial setting."  Fed. R. Civ. P. 56(c)(2) cmt. 2010 amendment.  "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  *Id.*

"At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial."  *Argo v. Blue Cross and Blue Shield of Kans., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (cleaned up).  "Parties may, for example, submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory

---

[3] Federal Rule of Civil Procedure 56(c)(2) indicates that objections to admissibility may be made in the summary judgment briefing, and that "there is no need to make a separate motion to strike." Fed. R. Civ. P. 56(c)(2) cmt. 2010 amendment.

that the evidence may ultimately be presented at trial in an admissible form." *Id*.  While the form

need not be admissible, the content or substance of the evidence must be admissible.  *Id*.

Turner objects to the admissibility of the content and substance of the Recordings.  Turner

objects to consideration of the Recordings on three grounds: (1) the Recordings have not been

authenticated; (2) the statements on the Recordings are inadmissible hearsay; and (3) the

Recordings were produced late in discovery, resulting in unfair prejudice.[4]

## A.   Authentication

Documentary evidence submitted in support of summary judgment must either be properly

authenticated or self-authenticating under the Federal Rules of Evidence.  *In re Wickens*, 416 B.R.

775, 776–77 (Bankr. D.N.M. 2009).  *See also Harlan v. United Fire & Cas. Co.*, 208 F. Supp. 3d

1168, 1176 (D. Kan. 2016) ("[A]uthentication is an essential prerequisite for admitting a document

into evidence at trial and for a court to consider it at summary judgment . . . ."); *New Mexico

Consol. Constr., LLC v. City Council of the City of Santa Fe*, 97 F. Supp. 3d 1287, 1294 n.6

(D.N.M. 2015) (declining to use unauthenticated document in ruling on summary judgment but

noting that proponent could still seek to authenticate document at trial); *Riley v. Town of

Bethlehem*, 44 F. Supp. 2d 451, 460 (N.D.N.Y. 1999) ("A motion to strike will [] be granted when

it challenges documentary evidence that was submitted in support of or in opposition to a summary

judgment motion, but which has not been properly authenticated.").   The authentication

requirement at the summary judgment stage extends to audio recordings.  *Fisher v. Univ. of Kan.

Facilities Operations*, No. 10-4102-DJW, 2011 WL 5868349, at *13 (D. Kan. Nov. 22, 2011)

---

[4] Turner does not appear to object to the Recordings being submitted in transcript form at the summary judgment stage.  Turner argues that the Recordings, even if ultimately provided in an admissible form, are not admissible under other evidentiary rules.

("Courts considering audio recorded conversations in resolving a motion for summary judgment require that the party offering the recordings provide a foundation or properly authenticate them.").

Defendants argue the Recordings are self-authenticating records of a regularly conducted business activity. *See* Fed. R. Evid. 902(11). Alternatively, Defendants argue that Farmer Brown has produced sufficient evidence "to support a finding that the [Recordings are] what the proponent claims [they are]." Fed. R. Evid. 901(a). Defendants contend they have met this burden, based on the methods set forth in Rule 901(b)(6) (authentication of telephone conversation based on call being placed to particular number and other circumstances) and/or Rule 901(b)(4) (authentication of item based on its distinctive characteristics and other circumstances).

### 1.     Rule 902(11)

To qualify for this provision, a record must meet the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified witness. These requirements are:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity[.]

Fed. R. Evid. 803(6)(A)-(C). "A qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008).

John Brown ("Brown"), President of Farmer Brown, submitted an affidavit in support of summary judgment stating:

> Using the telephone numbers associated with plaintiff Michael Turner, (918) 314-9663, (918) 219-4340 and (918) 541-5367, I performed a search on my company's

online recording system (dyl.com) for calls between my company and these numbers and the recordings represent recordings of the calls between the plaintiff and Maria Dossa. They have not been altered or manipulated in any way. The transcriptions constitute complete and accurate recordings of the conversations and the underlying recordings, which have been produced in discovery to all parties, are complete. These recordings were made automatically by the recording system at the time of the calls identified, based on information transmitted by individuals with knowledge of the matters discussed – Michael Turner and Maria Dossa. These recordings were kept in the regular course of my company's business activity and it was a regular practice to make such recordings.

ECF No. 96-23 at para 3-4.  The affidavit serves as the relevant certification under Rule 902(11).[5]

In his deposition, which was provided as a Rule 30(b)(6) corporate representative of Farmer Brown, Brown answered his lawyer's questions about the recording system:

> Q.  You discussed earlier that all communications, information, files, et cetera, are maintained in a cloud-based system, and that system is the Agency Matrix, correct?
> A.  Correct.
> Q.  And was it Farmer Brown's practice in 2016 and 2017 to record all calls with customers and maintain those calls in the Agency Matrix?
> Mr. Murphy:  Object to the form.
> A:  The calls are maintained in a different database than the phone system database, called DYL.
> Q.  (By Ms. Majou)  Okay.  So it was Farmer Brown's practice in 2016 and 2017 to record all customer calls and store them in a DYL database.
> A:  They are automatically stored.  We don't – we don't store them, but, yes.

ECF No.  103-2 at 87:6-21.[6]

Farmer Brown met its burden to show the Recordings are business records captured by the company's recording system in the ordinary course of business, for purposes of summary judgment.  Brown certified: (1) the Recordings are calls between a Farmer Brown business phone number and three specific phone numbers Farmer Brown associated with Turner; (2) the

---

[5] "A declaration that satisfies 28 U.S.C. § 1746 satisfies Rule 902(11)'s certification requirement, as would any comparable certification under oath." *United States v. Hicks*, No. 15-CR-33-A, 2018 WL 1789932, at *3 (W.D.N.Y. Apr. 16, 2018) (cleaned up).

[6] Turner's counsel did not cross-examine Brown regarding the recording system, and this is the extent of relevant deposition testimony.

Recordings were made automatically by a recording system at the time of the calls; (3) the Recordings, which are business calls between a Farmer Brown employee and customer, were kept by Farmer Brown in the regular course of its insurance business; and (4) recording and storing phone calls between Farmer Brown's employees and customers was a regular practice of Farmer Brown. This certification satisfies Rule 803(6)(A)-(C).

The Court has carefully reviewed the transcripts of the Recordings. Their content supports Farmer Brown's certification that these are business records. The calls range in date from September 16, 2016, to October 25, 2020. All Recordings in the summary judgment record begin with a greeting, where the parties clearly identify themselves as "Maria from Farmer Brown Insurance" or "Maria," and "Mike Turner," or "Mike." The parties to the call then proceed to discuss the insurance policy at issue. The content of the calls indicates that these Recordings are, as certified by Brown, business records of Farmer Brown related to the insurance business, rather than calls that Farmer Brown manufactured or obtained in some manner other than searching their business records.[7]

Turner argues Brown's certification is insufficient, because the calls are maintained in a third-party database called "DYL" rather than maintained in Farmer Brown's own cloud-based system called "Agency Matrix." Turner cites Brown's deposition testimony that "we [Farmer Brown] don't store them," and Turner argues that a DYL employee must authenticate the Recordings. Turner's argument is unavailing. Brown certified that these were "his company's" records, not DYL or another party's records. Brown and his assistant were able to search for,

---

[7] As argued by Turner, Farmer Brown did not provide the time of each call or the number associated with Turner for each call. These facts may impact the weight given to the Recordings at the summary judgment stage, but they do not negate the self-authenticating nature of the Recordings as records kept in the ordinary course of business.

access, and retrieve the records from the DYL database on their own, indicating they are indeed Farmer Brown's records and in Farmer Brown's possession.  The calls are between a Farmer Brown employee and Turner, not a DYL employee and Turner.  All evidence indicates the calls were indeed captured by Farmer Brown at the time of the call in the ordinary course of its own business, not in the course of a third-party's business.  Turner's reliance on *Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 327-28 (6th Cir. 2015), is misplaced.  In that case, the court reversed a finding of self-authentication.  But the relevant records were those of a third party, and the proponent of evidence failed to show that it "received and kept" those third-party records in the ordinary course of its business.  *Id.* at 327.  The proponent also failed to show whether the record was made by someone at the third-party's business with knowledge of the document.  *Id.* Here, Farmer Brown has shown that these are its records, that Farmer Brown performed the search and retrieved the records, and that Dossa, a Farmer Brown employee, has knowledge of the records as phone calls she had with a customer.

Turner also argues the Recordings, if authenticated, have not been authenticated for the specific purpose of establishing what was *not said* to him.  This appears to be Turner's primary concern about the Court's consideration of the Recordings at the summary judgment stage. Specifically, Turner asserts the Recordings do not constitute the universe of calls between himself and Dossa.  Turner submitted an affidavit in support of that assertion.  Although Turner's affidavit may impact any summary judgment ruling, the affidavit does not create an authentication issue. Turner's argument conflates the issues of: (1) whether the Recordings have been authenticated, and (2) whether Defendants can establish certain summary judgment facts by citations to the Recordings.  Because they have been authenticated, the Recordings can be used by Defendants (or Turner) in attempting to establish material facts at the summary judgment stage. If Turner creates

8

a question of fact on whether there are additional calls not captured by the recording system and/or not located in the search conducted by Farmer Brown, the Recordings will not be determinative evidence of what was *not said* to Turner by Dossa.  But this does not defeat self-authentication under Rule 902(11) or require striking the Recordings from the record.  It simply means there may be a question of fact on the proposition Defendants attempt to prove with the authenticated calls.

### 2.      Rules 901(b)(6) and 904(b)(4)

Alternatively, if not self-authenticating business records under Rule 902(11), the Recordings have been authenticated under Rule 901(b)(6) and (b)(4).  A telephone conversation can be authenticated if "a call was made to the number assigned at the time to (A) a particular person, if circumstances, including self-identification, show that the person answering was the one called; or (B) a particular business, if the call was made to a business and the call related to business reasonably transacted over the telephone."  Fed. R. Evid. 901(b)(6).  More generally, an item can be authenticated because its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, together with all the circumstances," indicate the Recordings are indeed what the proponents claim.  Fed. R. Evid. 901(b)(4).

The same facts that support the veracity of Brown's certification of the Recordings as business records under Rule 902(11) also support an independent finding of authentication under Rule 901(b)(6) and (b)(4).  As explained above, the calls range in date from September 16, 2016, to October 25, 2020.  The calls were all made to or from a Farmer Brown business number.  All Recordings begin with a greeting, where the parties clearly identify themselves as "Maria from Farmer Brown Insurance" or "Maria," and "Mike Turner," or "Mike."  They then proceed to discuss the insurance policy at issue in this case.  The identification of the parties; the calls being made to or from a Farmer Brown business number and captured on a business recording system;

and the distinctive characteristics of the calls, including discussion of the specific policy at issue, all demonstrate the Recordings are what they purport to be.

The Court's ruling on the authentication objection does not dictate what the Recordings establish for purposes of summary judgment. Nor does the Court make any findings as to whether Turner's evidence of additional calls creates questions of material fact. The Court merely holds there is no legal basis for striking the exhibits from the summary judgment record. The district judge will consider at summary judgment what the Recordings do or do not establish as a matter of law.

**B.     Hearsay**

Turner also argues the Recordings should be stricken because they contain inadmissible hearsay. Defendants argue that the statements on the Recordings are not hearsay because: (1) they are statements by an opposing party, under Rule 802(d)(2); and/or (2) they do not satisfy the hearsay definition in Rule 801(c)(2), because they are not being offered to prove the truth of the matters asserted. Alternatively, MetLife argues that the statements are admissible hearsay, under Rules 803(6) and (7) (records of regularly conducted business activity not lacking in trustworthiness), or Rule 803(5) (recorded recollection).

All statements on the Recordings relied on by Defendants in their motions for summary judgment are non-hearsay. Statements by Turner are statements offered against an opposing party, which were made by Turner in an individual capacity. *See* Fed. R. Evid. 803(d)(2). Statements by Dossa are not being offered for their truth. Defendants do not seek to prove that Dossa's representations about the policy were factually correct or true. Defendants seek to prove that Dossa spoke these words to Turner at relevant times, for purposes of establishing how Turner was "advised" by Dossa regarding the policy. It does not matter whether Dossa's representations are

actually supported by the policy, *i.e.*, whether they are true.  What matters is what words Dossa spoke to Turner and when.  In a similar circumstance, where loan purchasers wanted to offer evidence of what they were told about a loan, the Seventh Circuit stated the statements would be non-hearsay.  *See United States v. Phillips*, 731 F.3d 649, 653 (7th Cir. 2013) (explaining that statements were not hearsay, because they were being offered "not to prove that a stated-income loan does permit what [the speaker] told them it did, but to explain what they had heard [the speaker] tell them (and that they believed what he told them) when they made the application").  Although the facts here are reversed, the same principles apply.  Defendants offer the statements to prove what Dossa did or did not represent to Turner regarding policy coverage, rather than to prove the truth of Dossa's statements.

The Court does not reach whether the Recordings qualify for a hearsay exception.  Notably, Rules 803(6) and (7) have an additional requirement beyond the three requirements of Rule 902(11) – namely, that the opponent of the evidence "does not show that the . . . method or circumstances of preparation indicate a lack of trustworthiness."  Fed. R. Evid. 803(6) and (7).  To the extent Defendants seek to use any statements deemed "hearsay" to prove that the Recordings are a complete set of phone communications between Turner and Dossa and therefore establish a negative, *i.e.*, what Dossa did not say to Turner, the Court does not reach that issue.  The question is better suited for the district judge deciding the summary judgment motion in the event he decides that a hearsay exception is needed to overcome the objection.

### C.    Untimeliness/Prejudice

Although the Recordings were produced late in the discovery process, they were produced more than thirty days in advance of the discovery deadline and before the Rule 30(b)(6) deposition of Farmer Brown.  Turner had ample time remaining to explore issues related to the Recordings

11

with the corporate representative, and then request additional time to conduct follow-up discovery with DYL, if desired.  Instead, Turner failed to ask any questions about the process of obtaining the Recordings, and all testimony about the process was elicited by Farmer Brown's counsel. Turner also had ample time to issue further document requests to Farmer Brown or a subpoena to DYL but failed to do so (or request more time).  The timing of the production does not justify striking the Recordings from the summary judgment record.

III.    **Conclusion**

The Motion to Strike (ECF No. 103) is DENIED.

**SO ORDERED** this 3rd day of May, 2022.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**